IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

ARTHUR MURPHY-SWEET,

                Plaintiff,

    v.

Q4, LLC, an Idaho limited liability
company, and JOHN or JANE DOES
I – V, unknown individuals,

                Defendants.

Case No. CV 09-155-S-CWD

**MEMORANDUM DECISION AND ORDER**

**I.
Introduction**

       Defendant Q4, LLC's Motion for Summary Judgment (Docket No. 16), filed on October 6, 2009, is presently before the Court for consideration.  The Court conducted a hearing on January 19, 2010.  Both parties have submitted briefs and affidavits, and the matter is ripe for review.  After carefully considering the parties' arguments, affidavits, and the legal authority cited, the Court will deny the motion for summary judgment for the reasons discussed below.

**MEMORANDUM DECISION AND ORDER - 1**

## II.
## Facts

Plaintiff Arthur Murphy-Sweet ("Sweet") is a developmentally disabled man who worked at Quiznos sandwich shop located on University Drive in Boise, Idaho, from sometime in 2001 until April 14, 2008.[1]  Sweet obtained his job at Quiznos through assistance from Western Idaho Training Company ("WITCO"), a company that assists developmentally disabled individuals find and retain jobs in the community.  WITCO provides its consumers[2] with a job coach whose responsibilities include visiting the employer's site and meeting with the employer and the employee to ensure that the employee is doing well in the position he or she is placed in. (Aff. of Troupis, Ex. A, Moulton Depo. at 8, Docket No. 16-4.)  Since 2005, Deborah Moulton acted as Sweet's job coach,  with other job coaches filling in periodically when Ms. Moulton was not available.  (Moulton Depo. at 8, 14, 26–29, Docket No. 16-4.)

In January 2008, Defendant Q4, LLC ("Q4"), acquired ownership of Quiznos.  (Aff. of Troupis Ex. C, Greif Depo. at 13, Docket No. 16-6.)  Q4's members included Mr. Richard Greif ("Greif") and his daughter, Ms. Cassandra Greif-Walters ("Walters").  Walters was employed as the manager of the daily operations of all the Quiznos owned by Q4.  (Greif Depo. at 14, Docket No. 16-6; Walters Depo. at 26, Docket No. 16-5.)  She was on site at the University Quiznos to oversee the employees, including the assistant manager of the shop, during the work week, and became acquainted with Sweet.  (Walters Depo. at 25–26 Docket No. 16-5.)

---

[1]  There is some dispute concerning Sweet's last day of employment.  Q4 claims his last day was April 15, 2008, while Sweet claims it was April 14, 2008.  The actual date, however, is not material to the Court's decision.

[2]  WITCO regards the individuals it assists with job placement and retention as "consumers." (Mouton Depo. at 9, Docket No. 16-4.)

**MEMORANDUM DECISION AND ORDER - 2**

Walters understood that Sweet's job duties included doing dishes, taking out the garbage, cleaning the floor drains, cleaning the dining room, and greeting customers. (Walters Depo. at 51, Docket No. 16-5.) However, Walters testified that she continually had to direct Sweet, and that he was unable to adequately perform his job duties. (Walters Depo. at 71–72, Docket No. 16-5.) Walters claims that she attempted, on numerous occasions, to contact Deborah Moulton at WITCO to review Sweet's job performance and obtain assistance with how to work with Sweet. (Walters Depo. at 15, 74, Docket No. 16-5.)

Both Walters and Greif claim that Sweet voluntarily terminated his employment with Quiznos based upon conversations Sweet had with other employees about a job he had obtained at McDonald's. Morganne Shepherd, one of the store managers, testified that she "heard from someone else in the store that Art got a job at McDonald's and would be leaving Quiznos." (Shepherd Aff., Docket No. 16-7.) Shepherd asked Sweet when he was starting his job at McDonald's, and claims that Sweet acknowledged he was starting a new job at McDonald's but did not know an actual date when he would be starting. (*Id.*)

Walters was informed by one of the store managers, either Tracy Johnson or Shepherd, that Sweet told them he had a job lined up at McDonald's. (Walters Depo. at 78–80, Docket No. 16-5.) After hearing the news about Sweet's job at McDonald's, Walters followed up by approaching Sweet, telling him "congratulations," and asking him how much longer he wished to work at Quiznos before he started his new job at McDonald's. (Walters Depo. at 79, Docket No. 16-5.) Sweet did not give Walters a specific date that he wanted to quit working. (Walters Depo. at 79, Docket No. 16-5.) Walters had a second conversation with Sweet, asking him: "Would you like to tell me when you want your last day to be?" (Walters Depo. at 79, Docket

**MEMORANDUM DECISION AND ORDER - 3**

No. 16-5.)  Witnesses for Q4 do not indicate when this second conversation occurred, but at best

place it approximately two weeks prior to Sweet's last day of employment based upon Walters's

testimony that "at least two weeks' worth of schedules [were] up."  (Walters Depo. at 79, Docket

No. 16-5.)  Walters claims that Sweet, after prompting from her, pointed to a date on the

calendar and indicated that the date he pointed to would be his last day.  (*Id.*)  Greif had no first

hand knowledge of these events, as Walters recounted to Greif what she heard from Johnson or

Shepherd about Sweet's job at McDonald's.  (Greif Depo. at 52–53, Docket No. 16-6.)

Sweet, however, tells a different story.  He claims he enjoyed working at Quiznos.

(Sweet Aff., Docket No. 17-3.)  He recalls telling Walters that he "wanted to work at McDonalds

in the future," but that he "did not tell anyone at the University Quiznos that [he] got a job at

McDonalds and would be leaving [his] job at the University Quiznos."  (Sweet Aff., Docket No.

17-3.)

Debbie Moulton, Sweet's job coach, kept records of her visits to Quiznos.  (Moulton

Depo. at 18–21, Docket No. 16-4.)  She met with Walters on January 25, 2008.  (Moulton Depo.

at 21, Docket No. 16-4.)  Moulton claims that she did not receive any complaints from Walters

about Sweet's job performance between January and April of 2008.  (Moulton Depo. at 30,

Docket No. 16-4.)  On April 4, 2008, Moulton's notes reflect that Walters called WITCO, spoke

to Cynthia Arment, Moulton's supervisor, and indicated that Quiznos wanted to terminate

Sweet's employment.  (Moulton Depo. at 30, Docket No. 16-4.)  Mouton was told this second

hand, however, by Arment.  (Moulton Depo. at 32–33, Docket No. 16-4.)

Arment, Moulton's supervisor, claims that she did not speak to Walters but rather it was

Greif who called one week prior to Sweet's last day of work and indicated to her that Quiznos

MEMORANDUM DECISION AND ORDER - 4

had plans "to no longer continue to employ Art." (Arment Depo. at 15–16, Docket No. 18.)

Arment claims that Greif informed her that Sweet was not performing his position, and that he

was not working out as an employee for Quiznos. (Arment Depo. at 16, Docket No. 18.)

According to Arment, Greif asked if WITCO would let Sweet know, to which Arment responded

that it was the employer's responsibility, not WITCO's, to terminate Sweet's employment.

(Arment Depo. at 16, Docket No. 18.) Arment claims that Greif then asked if someone from

WITCO would be present at a meeting for the purpose of terminating Sweet's employment, and

Arment agreed to the request. (Arment Depo. at 16, Docket No. 18.) Arment therefore directed

Moulton to meet with Walters and Sweet on April 14, 2008, and it was Arment's understanding

that Sweet's employment was going to be terminated on that date. (Arment Depo. at 16–17,

Docket No. 18.) Walters, however, denies that she and her father had any intent to terminate

Sweet's employment from Quiznos (Walters Depo. at 78, 83, Docket No. 16-5), and Greif denies

that he had a conversation with Arment telling her they wished to terminate Sweet's

employment. (Greif Depo. at 57–58, Docket No. 16-6.)

Nevertheless, as a result of the phone call between either Walters or Greif and Arment,

and at Arment's direction, Moulton went to Quiznos on April 14, 2008, at 11:00 a.m. with the

intent to meet with Sweet and Walters, and with the understanding that Sweet's employment

would be terminated. (Moulton Depo. at 41–43, 50–53, Docket No. 16-4.) However, Walters

did not show up for the meeting, and only Shepherd, the Quiznos assistant manager, was present

with Moulton and Sweet. (Moulton Depo. at 43–44, Docket No. 16-4.) During the meeting,

Shepherd did not actually tell Sweet that he was fired, which Moulton confirms. (Moulton

Depo. at 44, Docket No. 16-4; Shepherd Aff., Docket No. 16-7.) Moulton claims that Shepherd

**MEMORANDUM DECISION AND ORDER - 5**

did tell her that "this was going to be Art's last day and that . . . Cassie [Walters] wanted to know

if he could finish out his workday today." (Moulton Depo. at 53, 67 Docket No. 16-4.)

Shepherd denies making such a statement. (Shepherd Aff., Docket No. 16-7.) Moulton also

claims that she asked Shepherd why Sweet was being let go, but that Shepherd did not answer.

(Moulton Depo. at 54, Docket No. 16-4.) Moulton then informed Shepherd that Sweet was not

going to finish out his shift, and Quiznos should mail his last paycheck to Sweet's home.

(Moulton Depo. at 54, 67 Docket No. 16-4.)

Both Moulton and Arment believed that Sweet's employment was terminated by

Quiznos, and that he did not voluntarily quit. (Moulton Depo. at 54–55, Docket No. 16-4;

Arment Depo. at 21, Docket No. 18.) Arment explained that Sweet, because of his cognitive

limitations, was incapable without assistance from his job coach to inquire about, apply for, or

obtain employment elsewhere. (Arment Depo. at 21, Docket No. 18.)

### III.
### Discussion

### A.      Standard of Review for Summary Judgment.

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil

Procedure, which provides, in pertinent part, that judgment "should be rendered if the

pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of

law." Fed. R. Civ. P. 56(c)(2). Under Rule 56, summary judgment is mandated if the non-moving

party fails to make a showing sufficient to establish the existence of an element which is

essential to the non-moving party's case and upon which the nonmoving party will bear the

burden of proof at trial. *See Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). If the non-

moving party fails to make such a showing on any essential element, "there can be no 'genuine

issue of material fact,' since a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.[3]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary

judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome

of the litigation.  An issue, before it may be considered "genuine," must be established by

"sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to

resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent*, 523 F.2d 461, 464

(1st Cir. 1975) (quoting *First Nat'l Bank v. Cities Serv. Co. Inc.*, 391 U.S. 253, 289 (1968)). The

Ninth Circuit cases are in accord. *See, e.g., British Motor Car Distrib. v. San Francisco*

*Automotive Indus. Welfare Fund*, 882 F.2d 371 (9th Cir. 1989). When applying this standard, the

court must view all of the evidence in a light most favorable to the non-moving party. *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Hughes v. United States*, 953 F.2d 531, 541

(9th Cir. 1992).

**B.      Standards for a Claim of Unlawful Discharge.**

The ADA prohibits "excluding or otherwise denying equal jobs or benefits to a qualified

individual because of the known disability of an individual." 42 U.S.C. § 12112.  Discrimination

---

[3]  *See also* Fed. R. Civ. P. 56(e)(2), which provides, in part:

> When a motion for summary judgment is properly made and supported,
> an opposing party may not rely merely on allegations or denials in its
> own pleading; rather, its response must–by affidavits or as otherwise
> provided in this rule–set out specific facts showing a genuine issue for
> trial.

**MEMORANDUM DECISION AND ORDER - 7**

under the ADA is defined as "limiting, segregating, or classifying a job applicant in a way that

adversely affects the opportunities or status of such applicant or employee because of the

disability of such . . . employee" and includes "utilizing standards, criteria, or methods of

administration-(A) that have the effect of discrimination on the basis of disability . . . ."

Disability is defined as "a physical or mental impairment that substantially limits one or more of

the major life activities." 42 U.S.C. § 12102(2)(A).  Major life activities include "caring for

oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and

working." 29 C.F.R. § 1630.2(i).

To prevail on a claim of unlawful discharge under the ADA, the "plaintiff must establish:

(1) that he is a disabled person within the meaning of the ADA; (2) that he is qualified, that is,

with or without reasonable accommodation (which he must describe), he is able to perform the

essential functions of the job; and (3) that the employer terminated [his employment] because of

his disability." *Cooper v. Neiman Marcus Group*, 125 F.3d 786, 790 (9th Cir. 1997) (quoting

*Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir.1996)).  To state a prima facie case under

the ADA, Sweet must prove that he is a qualified individual with a disability who was

discharged from his employment because of the disability. *Cooper*, 125 F.3d at 790 (citing

*Sanders v. Arneson Products, Inc.*, 91 F.3d 1351, 1353 (9th Cir.1996), *cert. denied*, 520 U.S.

1116 (1997)).

Sweet's additional claims allege wrongful discharge under the Idaho Human Rights Act,

Idaho Code §§ 67-5901 –5912, and violation of the covenant of good faith and fair dealing

inherent in every employment agreement.  Both claims require, as an element of the prima facia

case, proof that Sweet was discharged from his employment by Quiznos on account of his

**MEMORANDUM DECISION AND ORDER - 8**

disability.  *Stansbury v. Blue Cross Health Serv.*, 918 P.2d 266, 269 (Idaho 1996.)

Consequently, if Sweet voluntarily quit his employment with Quiznos, he could not prove

discharge, an essential element of his prima facie case, for any of his causes of action.[4]

## C.    Disposition.

Upon review of the facts, and viewing them in a light most favorable to Sweet, the non-

moving party, the Court finds that the facts are disputed whether Sweet voluntarily quit, or

whether his employment was terminated.  The disputed facts are material, in that they all relate

to an element of Sweet's prima facie case.  Walters heard information third hand from others,

and based upon what she heard, she believed that Sweet had, in fact, obtained other employment.

It appears Walters assumed, based upon what others told her, that Sweet intended to quit, and

armed with that information, asked Sweet to tell her when his last day of employment with

Quiznos would be.  Sweet, perhaps confused, perhaps not, pointed to a day on the calendar.

But Sweet, a cognitively impaired individual, denies telling anyone he actually obtained a

job at McDonald's and intended to leave Quiznos.  Instead, he asserts he told others that he

wanted to work at McDonald's "someday."  Arment then recounts a conversation she had with

Greif wherein he informed her that Quiznos wished to terminate Sweet's employment, a

conversation Greif denies occurred.[5]  But Arment allegedly arranged a meeting between Walters,

Moulton, and Sweet so that Walters could inform Sweet that his employment with Quiznos was

---

[4]  During the hearing on January 19, 2010, the parties confirmed that there are no allegations that
Sweet suffered intolerable working conditions such that he was constructively discharged.  Rather, the
parties dispute whether Sweet voluntarily quit, or was fired.  The parties also confirmed that, for purposes
of the Motion for Summary Judgment, they were not disputing Sweet's claim of disability.

[5]  Despite Q4's assertion that Walters or Greif had no intent to terminate Sweet's employment, Q4
recited in support of their Motion for Summary Judgment numerous issues that Walters and Greif were
encountering with Sweet's employment.

**MEMORANDUM DECISION AND ORDER - 9**

terminated.  Walters, however, denies that she was supposed to attend any such meeting.  But a

meeting did indeed occur on April 14 or 15, 2008,[6] and at that meeting, Moulton allegedly asked

Shepherd, the Quiznos assistant manager, why Quiznos was letting Sweet go.  Shepherd neither

confirmed nor denied Moulton's interpretation of the meeting's purpose.

       Q4's argument that it is "immaterial" that the parties' dispute the substance of their

conversations fails, as it is material what everyone believed they discussed or did not discuss.

Q4 relies upon the absence of any fact indicating someone told Sweet that he was fired, and the

lack of any confirmation by Sweet that a specific individual stated to him that his employment

with Quiznos was terminated.  But while there is nothing in the record indicating that a specific

meeting occurred during which Walters, or anyone else, expressly informed Sweet that his

employment at Quiznos was terminated involuntarily and that April 14 was his last day of work,

the Court cannot ignore the context and the events that preceded the meeting Moulton alleges

occurred on April 14, 2008.

       There are too many disputed issues of material fact concerning the events preceding that

meeting, and the context in this case is important.  It is not enough on summary judgment for Q4

to rely upon the lack of any express statement by Quiznos personnel that Sweet was fired,

especially when viewing all of the evidence preceding the meeting on April 14, 2008, and the

absence of any attempt by Quiznos to correct, rather than argue about, WITCO's understanding

of the events.  Ultimately, the trier of fact should be left to sort through the events and

conversations preceding the last day of Sweet's employment, determine the credibility of the

---

[6] It is not clear when the meeting actually occurred, and the Court is therefore accepting that it occurred on April 14, 2008, based upon Moulton's testimony and in the absence of any other employment records.

**MEMORANDUM DECISION AND ORDER - 10**

witnesses, and decide whether the facts support Walter's belief that Sweet intended to quit, or

Sweet's belief that he did not quit, which in turn is supported by Arment's and Moulton's

understanding that Quiznos wished to terminate Sweet's employment.

In the end, based upon the facts presented in the record before the Court, it should be left

to the jury to decide whether Sweet voluntarily quit his employment, or whether his employment

was involuntarily terminated by Quiznos.  Accordingly, summary judgment will be denied.

The Court confirmed with the parties during the hearing on January 19, 2010, that the

settlement conference, which was to be held by December 10, 2009 (Docket No. 9), did not

occur.  Therefore, the Court will amend the deadline.

**MEMORANDUM DECISION AND ORDER - 11**

## ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS**

**HEREBY ORDERED that:**

1)      Defendant's Motion for Summary Judgment (Docket No. 16) is **DENIED**.

2)      The Court amends the Scheduling Order (Docket No. 9), and orders that the

parties participate in a **Settlement Conference to be held by June 1, 2010**. The

matter shall remain referred to Magistrate Judge Larry M. Boyle for the purpose

of conducting a settlement conference.  The parties shall contact Judge Boyle's

chambers at (208) 334-1360 within ten (10) days from the date of this order to

schedule the settlement conference.  All other deadlines shall remain the same.



DATED: January 21, 2010

Honorable Candy W. Dale
Chief United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 12**